IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shawn Justin Burris, ) | C/A No.: 2:13-699-RBH-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Det. Ware, Det. Sturkie, Det. Terry, Ptl. ) | |
| Scott Micheal Thomes, Thomas Eugene ) | |
| Bennett, and Sgt. Darin Cobb, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Shawn Justin Burris, proceeding pro se and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by Det. Ware, Det. Sturkie, Det. Terry, Ptl. Thomes, Ptl. Bennett, and Sgt. Cobb ("Defendants"). Defendants are detectives or officers employed by the North Charleston Police Department ("NCPD").

This matter comes before the court on Defendants' motion for summary judgment [Entry #67] and Plaintiff's motion for summary judgment [Entry #77]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #68]. These motions having been fully briefed [Entry #81, #82, #95, #100, #108], they are ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions are dispositive, this report and recommendation is entered for the

district judge's consideration. For the reasons that follow, the undersigned recommends granting Defendants' motion for summary judgment and denying Plaintiff's motion for summary judgment.

I.   Factual Background

Plaintiff's complaint alleges malicious prosecution, excessive force, false arrest, and defamation, related to investigations, arrests, and prosecutions that occurred between August 2009 and June 2011. [Entry #11-1 at 2–3]. Specifically, Plaintiff contends that Terry and Ware threatened him with arrest in 2009 after he reported a stolen vehicle. *Id.* at 4. No arrest occurred. *Id.* Plaintiff claims that in mid-2010, Terry and Ware again indicated their intent to "get" Plaintiff after the arrest of his cousin. *Id.* In late 2010 or early 2011, Ware allegedly condemned Plaintiff's residence for lack of electricity and running water after the two argued over Ware visiting Plaintiff's property. *Id.* Plaintiff contends that, following this confrontation, he realized Ware had a grudge against him. *Id.* at 5. Plaintiff alleges that between March 17, 2011, and June 28, 2011, he "was arrested 3 different times on 4 different felonies carrying a possible sentence of 30 plus years." *Id.* The first arrest, during which Thomes allegedly used excessive force, was on March 17, 2011, for property crime enhancement/malicious damage to property and marijuana possession. *Id.* at 5–6. Plaintiff contends that he suffered two broken teeth and a dislocated shoulder, which still requires medical treatment. *Id.* at 6, 15. Plaintiff alleges that the next arrest occurred on May 13, 2011, for third-degree criminal sexual conduct ("CSC"). *Id.* at 6. Plaintiff alleges that Bennett and Cobb prosecuted the CSC case with malicious intent and presented false evidence to procure a search warrant to look for

evidence of other crimes for which he was never charged. [Entry #11 at 1; Entry #11-1 at 8]. The final arrest occurred on June 28, 2011, when Terry and Sturkie allegedly investigated and prosecuted Plaintiff for possession of stolen goods. [Entry #11-1 at 10–11; Entry #95 at 3]. Plaintiff claims that he entered a guilty plea to the stolen goods charge under duress and received a thirty-day sentence, suspended upon time served. [Entry #11-1 at 13]. Plaintiff seeks monetary damages. *Id.* at 17.

II.     Discussion

     A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

3

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      B.    Analysis

           1.    Plaintiff's Motion for Summary Judgment

Plaintiff alleges that he is entitled to summary judgment because Defendants failed to respond to his interrogatories and request for production that were served on November 27, 2013. [Entry #77, #77-1, #77-2, #77-3]. Defendants contend that discovery in this matter ended on October 21, 2013, and Plaintiff mailed his discovery requests after this date. [Entry #81 at 1]. Defendants allege that it took time to answer Plaintiff's lengthy discovery requests and that they responded to Plaintiff's discovery requests on February 7, 2014. [Entry #81 at 2; #81-1 at 2]. Plaintiff acknowledges that his discovery requests were untimely, but contends that the untimeliness should be excused due to his lack of knowledge of state and federal law. [Entry #82]. Plaintiff has not been prejudiced by Defendants' purported untimely responses to his discovery requests, as Defendants

were under no obligation to respond to discovery that was not timely served. As such, the undersigned recommends Plaintiff's motion for summary judgment be denied.

        2.        Defendants' Motion for Summary Judgment

            a.        Statute of Limitations

Defendants argue that Plaintiff's claims from 2009 are barred by the statute of limitations. [Entry #67-1 at 6]. Plaintiff argues that he was not aware that his rights were violated until his first arrest on March 17, 2011, and therefore his claims are not time-barred. [Entry #95 at 6].

Section 1983 does not contain an express statute of limitations. Therefore, in civil rights cases filed in the District of South Carolina, this court applies South Carolina's general or residual personal injury statute of limitations, which is three years. S.C. Code Ann. § 15-3-530(5); *see Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (holding that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions"); *Hoffman v. Tuten*, 446 F. Supp. 2d 455, 459 (D.S.C. 2006). South Carolina determines accrual of the limitations period based on the date the person knew, or should by the exercise of reasonable diligence know, that he had a claim. S.C. Code Ann. § 15-78-110, § 15-3-535.

As an initial matter, Plaintiff's claim that Terry and Ware threatened him with arrest after he reported a vehicle stolen does not appear to state a cause of action. However, even if Plaintiff had a valid claim for such an incident, a person of reasonable diligence would have been aware of the claims in 2009 when the event allegedly

5

occurred. Accordingly, as Plaintiff filed this case on March 15, 2013, any claim related to events that occurred in 2009 fall outside of the statute of limitations. Accordingly, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claims related to the 2009 incident.

                b.      Invasion of Privacy

Plaintiff contends that after his cousin was arrested in mid-2010, Ware and Terry went to his home, told him they knew he had been with his cousin, and threatened him. [Entry #11-1 at 4]. Defendants argue that any perceived claim from this incident does not rise to the level of a constitutional violation or a violation of federal law. [Entry #67-1 at 11]. Plaintiff argues that Ware and Terry violated his right to privacy by coming to his home, in an official capacity, without probable cause. [Entry #95 at 8]. Plaintiff also contends that they violated his due process rights by making false accusations and threats. *Id.* Plaintiff has not alleged that Defendants illegally searched his home during this incident. *Id.*

To the extent Plaintiff asserts a violation of a substantive due process right to privacy, such a claim is unavailing. "There is no general constitutional right to privacy." *Edwards v. City of Goldsboro*, 178 F.3d 231, 252 (4th Cir. 1999) (affirming dismissal of § 1983 action alleging violation of right to privacy); *see also Soldal v. Cook County*, 506 U.S. 56, 64 (1992) ("[T]he Fourth Amendment can neither be translated into a provision dealing with constitutionally protected areas nor into a general constitutional right to privacy."). Further, it is well settled that alleged verbal confrontations, accusations, or threats, without more, are not actionable under § 1983. *Ajaj v. United States*, 479 F. Supp.

6

2d 501, 538 n.16 (D.S.C. 2007); *Wilson v. McKeller,* 254 Fed. Appx. 960, 961 (4th Cir. 2007) (finding that mere threats or verbal abuse, standing alone, are not a cognizable injury in a § 1983 civil rights action). Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's improper investigation and invasion of privacy claims.[1]

    c.  Preclusion Based on *Heck v. Humphrey*

Plaintiff claims he was falsely arrested on June 28, 2011, on charges for unlawful transportation of non-ferrous metal, and he subsequently entered an involuntary guilty plea "due to [the] duress of false imprisonment on these charges." [Entry #95 at 3–4]. To the extent Plaintiff seeks damages for alleged constitutional violations stemming from his criminal arrest, prosecution, and/or sentence, his action is barred by the United States Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487. In so holding, the *Heck* court found that § 1983 actions for unlawful conviction or confinement necessarily require a finding that Plaintiff's prior criminal proceeding terminated in his favor. *Id.* at 484–86. Plaintiff indicated that pled guilty on the stolen goods charges. [Entry #11-1 at 13]. Because Plaintiff has not shown he

---

[1] It does not appear that Plaintiff is asserting any state law claims regarding this incident. However, such claims would be barred by the two-year statute of limitation on claims brought pursuant to the South Carolina Tort Claims Act ("SCTCA"). S.C. Code Ann. § 15-78-110.

received a favorable termination of the June 28, 2011, charge, and because success on this claim would question the validity of the charge, the undersigned recommends Defendants be granted summary judgment on any alleged constitutional violations stemming from Plaintiff's June 28, 2011, arrest.

### d.    Illegal Seizure and Improper Condemnation

Plaintiff contends that Ware sought to search his home, and after Plaintiff denied him entry, Ware condemned Plaintiff's house for lack of running water. [Entry #11-1 at 4]. Plaintiff alleges that Defendants condemned his home in an attempt to unlawfully seize his property, despite admitting they had no probable cause. [Entry #95 at 16]. Plaintiff also contends that the officers spoke with him for 3.5 hours, which he argues constituted an illegal seizure. *Id.* at 10–11. Ware states that officers were at Plaintiff's house in response to a report of a disturbance between Plaintiff and his cousin, and the responding officers requested his assistance at the scene. [Entry #67-2 at 1–2]. Ware states that both Plaintiff and his cousin advised that there was no running water in the house, and Ware informed Plaintiff that, under a North Charleston ordinance, they could not stay in the home. [Entry #67-1 at 12; #67-2 at 2].

The Fourth Circuit has noted that the right of the police to ask questions is of crucial importance:

> If every encounter between a citizen and a police officer constituted a seizure, it would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. Simple questioning by police is an important tool for the effective enforcement of criminal laws. Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished.

*United States v. Flowers,* 912 F.2d 707, 710 (4th Cir. 1990) (citations and internal quotations omitted). A seizure implicating the Fourth Amendment does not occur simply because a police officer approaches an individual and asks questions. *United States v. Watkins*, 378 Fed. Appx. 328, 329 (4th Cir. 2010). Rather, a seizure occurs when an officer restrains a person's freedom of movement and, in view of the totality of the circumstances, a reasonable person would not feel free to terminate the encounter. *Id.*

Plaintiff has not alleged any facts that support his illegal seizure claim. The evidence shows that Plaintiff was able to enter and exit his home at will, was able to close and lock his door, and was able to leave his home after his conversations with the officers concluded. [Entry #67-2 at 3–7, #95 at 33–34]. The evidence also shows that no officer entered Plaintiff's home or removed any property from the home. *Id.* To the extent Plaintiff contends that the condemnation of his home was improper, Plaintiff has not offered any evidence that his home had running water and electricity or was otherwise in compliance with local ordinances. Accordingly, the undersigned recommends Defendants be granted summary judgment on Plaintiff's illegal seizure and improper condemnation claims.

                e.       False Arrest and Negligent Investigation

Plaintiff alleges he was falsely arrested on March 17, 2011, and May 13, 2011. Under Supreme Court precedent, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36.

"In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991). As a result, in order to prove an absence of probable cause, Plaintiff must allege facts that made it unjustifiable for a reasonable officer to conclude he was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

First, Plaintiff contends that Thomes illegally arrested him on March 17, 2011, and falsely charged him with malicious damage to property and possession of marijuana. [Entry #11, #11-1 at 5–6]. Plaintiff contends that Thomes' investigation was inadequate, that his report was inconsistent and ignored facts showing Plaintiff was innocent, and that

the purported witnesses to the crime could not identify the individuals involved. *Id.* at 19–20.

Thomes states he was flagged down by two people who pointed at a man who was running away and advised him that the fleeing suspect had been tampering with their air conditioning unit and tearing off wiring or piping. [Entry #67-3]. While chasing the suspect, whom Thomes later determined to be Plaintiff, Thomes saw him drop something on the ground that turned out to be copper. *Id*. Therefore, the totality of the facts and circumstances within Thomes' knowledge on March 17, 2011, was sufficient to warrant a prudent or reasonable person to believe that Plaintiff had committed the criminal offense for which he was arrested.[2]

Further, Plaintiff's contention that Thomes' investigation was inadequate is insufficient to state a constitutional claim. *Goodwyn v. Kincheloe,* 803 F.2d 713 (4th Cir. 1986) (holding that a police officer's negligent investigation does not rise to the level necessary to state a claim under § 1983); *Carter v. Bone*, C/A No. 3:09-779-CMC-JRM, 2010 WL 558598, *6 (D.S.C. Feb. 10, 2010) (finding that there is no cause of action for

---

[2] To the extent Plaintiff alleges that Thomes is lying about apprehending Plaintiff as he ran away, his false arrest claim is barred by *Heck v. Humphrey.* Such allegations would imply the charges were invalid and Plaintiff has not alleged a favorable determination. Plaintiff admits that he pled guilty to a June 2011 misdemeanor charge of receiving stolen goods in exchange for the dismissal of the then-pending felony charges. [Entry #11-1 at 13]. Public records show the charges were dismissed as nolle prossed. *See* Public Record Search, http://jcmsweb.charlestoncounty.org/PublicIndex/CaseDetails.aspx?County=10& CourtAgency=10001&Casenum=M610284&CaseType=C (last visited July 30, 2014). As such, he is unable to show that his felony charges were terminated in his favor. *See Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997), cert. denied, 523 U.S. 1073 (1998) (finding that the plaintiff has the burden of proving a favorable termination and the abandonment of proceedings does not indicate the innocence of the accused when the nolle prosequi results from an agreement or compromise with the accused).

negligent investigation under § 1983).

Plaintiff also asserts that he was improperly arrested for CSC on May 13, 2011, and that his arrest was used only to establish probable cause to obtain a search warrant for his house. [Entry #11-1 at 6–8]. Defendants contend that it is uncontradicted that Plaintiff had sex with his accuser, that she gave a statement to the police alleging she was raped, and that she was transported to the hospital where a rape kit was completed. [Entry #67-1 at 15, #95-2 at 25–26]. Plaintiff contends that, at the time of his arrest, he told Bennett and Cobb that he paid his accuser to have sex, and therefore, Plaintiff contends there was not probable cause to arrest him for CSC. [Entry #95 at 22–23]. Plaintiff further contends that he should not have been arrested because the police investigation following his arrest revealed the following: (1) that he passed a polygraph demonstrating he was telling the truth at the time of his arrest; (2) that his accuser's swollen eye and other bruises came from a physical altercation with her sister and was not evidence of rape; and (3) that his accuser came back to his house after the alleged assault and asked him for money. *Id.*

A review of the facts known to Bennett and Cobb at the time of Plaintiff's arrest shows that these officers had probable cause to arrest Plaintiff for CSC because the victim claimed she was raped, went to the hospital to have a rape kit performed, and Plaintiff admitted to having sex with her. Although Plaintiff alleges that an investigation after his arrest revealed facts inconsistent with the rape charges, the undersigned must review whether probable cause existed at the time of the arrest. Plaintiff's allegations that the officers inadequately investigated his accuser's allegations do not state a constitutional violation. *See Goodwyn,* 803 F.2d at 713; *Carter*, 2010 WL 558598, at *6.

12

The undersigned recommends that Defendants be granted summary judgment on Plaintiff's false arrest and negligent investigation claims.[3]

Plaintiff also argues that the scope of the search warrant was an abuse of process. *Id.* at 23. Plaintiff contends that the police searched his home in reference to an alleged sexual assault, but removed wire sheathing, which should not have been included in the search warrant and which they did not have probable cause to take. *Id.* at 24. Det. Sgt. C. Johnson was the affiant who obtained the search warrant. [Entry #95-2 at 44–49]. As Johnson is not a defendant in this case, any claims against him are not properly before the court.

### f.     Excessive Force

Plaintiff contends that during his March 17, 2011, arrest, he ran towards Thomes, who grabbed him and slammed him to the ground, breaking two of his teeth. [Entry #11-1 at 6]. Plaintiff further claims that once he was handcuffed, Thomes jerked him, dislocating his shoulder and rotator cuff. Plaintiff cites to dental records from March 24, 2011, to show his teeth were broken at the root. [Entry #95 at 21; #95-2 at 21–23]. In addition, Plaintiff's April 14, 2011, medical records note that he complained about shoulder pain resulting from a dislocated shoulder a few weeks prior. *Id.* at 22–23.

---

[3] To the extent Plaintiff brings a conspiracy claim, the undersigned finds that Plaintiff has failed to set forth any evidence, other than his own speculation, to establish that Defendants intentionally conspired to deny Plaintiff's constitutional rights. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (finding that, to survive summary judgment, Plaintiff must at least come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective).

Thomes states he was flagged down by two people who pointed at a man who was running away and advised him that the fleeing suspect had been tampering with their air conditioning unit and tearing off wiring or piping. [Entry #67-3]. Thomes states that he began chasing after the suspect, who was later identified as Plaintiff, because he did not know if the suspect was armed and was concerned for the safety of innocent bystanders in the area. *Id.* Thomes states that he caught up with Plaintiff, tackled him to the ground, and placed him under arrest. *Id.* at 1–2. Thomes states that Plaintiff did not have any visual injuries after he took him into custody, and Plaintiff declined medical treatment. *Id.* at 2. Thomes also states that Plaintiff did not report any injuries during booking or intake at Charleston County Detention Center. *Id.*

An excessive force claim of an arrestee is governed by the due process clause of the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). In evaluating a claim for excessive force, the issue is whether the defendant "inflicted unnecessary and wanton pain and suffering." *Id.* at 446. In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that force was applied "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010).

The Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and

14

the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of others, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, it appears that Thomes was reasonable in applying force. Plaintiff claims that he ran towards Thomes, and it was therefore reasonable of Thomes to use the force necessary to gain control of Plaintiff. Although Plaintiff complained of broken teeth and of a dislocated shoulder a week and three weeks, respectively, after the incident, it does not appear that Thomes used greater force than was necessary. Plaintiff declined medical attention on the night of the incident. Although Plaintiff later discovered two broken teeth and a dislocated shoulder, there is no indication that Thomes applied force for the purpose of harming Plaintiff. Additionally, Thomes indicated that he was concerned about the safety of bystanders because he did not know whether Plaintiff was armed. After a balance of the *Whitley* factors, the undersigned finds that Plaintiff has not shown that Thomes applied force maliciously or sadistically for the purpose of causing harm. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's excessive force claim.

g.     State Law Claims

Plaintiff contends that Defendants defamed him when they charged him with CSC and this charge was aired on the television and published in the newspaper. [Entry #11-1 at 15]. Plaintiff contends that he suffered embarrassment from the CSC charge and claims that he can no longer work as a subcontractor because his employers now perform

background checks and their insurance will not cover him. *Id.* at 10. Plaintiff asserts that he has shown actual malice "by officers['] actions, embellishments[,] suppression of evidence, deliberate indifference, and failing to investigate facts when presented with them." [Entry #95 at 29–30]. Defendants contend Plaintiff cannot establish the requisite elements to prove defamation, and even if he could, the alleged defamatory statements were privileged. [Entry #67-1 at 20–24].

The tort of defamation allows a plaintiff to recover for injury to his reputation as the result of the defendant's communications to others of a false message about the plaintiff. *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 501 (S.C. 1998). Under South Carolina law, to state a cause of action for defamation, a plaintiff must show the existence of some message that (1) is defamatory, (2) is published with actual or implied malice, (3) is false, (4) is published by the defendant, (5) concerned the plaintiff, and (6) resulted in legally presumed or in special damages. *Parker v. Evening Post Pub. Co.*, 452 S.E.2d 640, 644 (S.C. Ct. App. 1994). However, "[t]he protection of privilege extends generally to remarks made in the prosecution of an inquiry regarding a crime which has been committed; and for the purpose of detecting and bringing the criminal to punishment." *Bell v. Bank of Abbeville*, 38 S.E.2d 641, 643 (S.C. 1946). "Where the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134 (S.C. 1999). To prove actual malice, the plaintiff must show that "the defendant was activated by ill will in what he did, with the design to causelessly

16

and wantonly injure the plaintiff;" or that the statements were published with such recklessness as to show a conscious disregard for plaintiff's rights. *Holtzscheiter*, 506 S.E.2d at 502 n. 3.

Any alleged communication by Defendants was subject to a qualified privilege, and Plaintiff has not offered sufficient evidence to establish the requisite showing of malice to overcome the privilege. Further, under South Carolina law, contents of governmental records—such as judicial proceedings, case reports, published cases, investigative reports, or arrest records—do not give rise to liability for slander or libel. *See Padgett v. Sun News*, 292 S.E.2d 30, 32–33 (S.C. 1982). The undersigned recommends that Defendants be granted summary judgment on Plaintiff's defamation claim.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [Entry #67] be granted and Plaintiff's motion for summary judgment [Entry #77] be denied.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 31, 2014
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).